**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 13-204-DLB**

**JUNELL NICOLE MCQUEEN**                                               **PLAINTIFF**

vs.                **MEMORANDUM OPINION AND ORDER**

**CAROLYN W. COLVIN, Acting**                             **DEFENDANT**
**Commissioner of Social Security**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Junell Nicole McQueen filed her current applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments, alleging disability as of December 18, 2010.[1] (Tr. 171-76). Plaintiff's claim was denied initially and on reconsideration. (Tr. 122-29). On July 11, 2012, Administrative Law Judge Todd Spangler

---

[1] Plaintiff first filed an application for disability benefits on October 7, 2009. After an administrative hearing, ALJ Mark Siegel issued an unfavorable decision, which the Appeals Council affirmed. The amended disability onset date for the current application is December 18, 2010, the day after ALJ Siegel issued his decision. There is no record of further petition for review. For these reasons, ALJ Spangler concluded that the current filing was not an implied request to reopen the current application. There being no other valid basis for doing so, ALJ Spangler "proceed[ed] to analyze the record pertaining to the period of adjudication commencing December 18, 2010." (Tr. 10).

1

conducted an administrative hearing at Plaintiff's request. (Tr. 130-41). On September 12, 2012, ALJ Spangler ruled that Plaintiff was not entitled to benefits. (Tr. 7-22). This decision became the final decision of the Commissioner when the Appeals Council denied review on September 3, 2013. (Tr. 1-5).

On October 21, 2013, Plaintiff filed the instant action. (Doc. # 2). The matter has culminated in cross motions for summary judgment, which are now ripe for review. (Docs. # 15-2 and 16).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal

a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 12). At Step 2, the ALJ found Plaintiff's bilateral patellofemoral syndrome with tendonitis, lumbar degenerative disc disease, hypoplastic thumbs status post surgical intervention, anxiety and pain disorder to be severe impairments. (Tr. 13).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14). As to Plaintiff's alleged physical impairments, the ALJ simply noted that "[t]he claimant did not argue conformity with a particular physical listing nor did my independent review of the record reveal sufficient medical documentation to substantiate a physical impairment of listing level severity." (*Id.*). The ALJ then determined that Plaintiff had only moderate limitation in social function and concentration, persistence and pace, which is insufficient to satisfy the requirements of Listing 12.04 (affective disorders) or 12.06 (anxiety-related disorders). (*Id.*). In support of this conclusion, the ALJ pointed out that Plaintiff has lived independently for quite some time and had no

3

documented episodes of decompensation. (Tr. 15).

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform a limited range of light work "requiring no climbing ladders, ropes or scaffolds; no more than frequent kneeling, stooping, crouching, crawling, balancing, climbing ramps and stairs, handling and fingering bilaterally; the avoidance of concentrated exposure to temperature extremes and vibration; and the accommodation of her need for a sit/stand option every hour." (Tr. 16). The ALJ also found that Plaintiff "can understand, remember, and carry[] out simple and some detailed instructions in an object focused environment." (*Id.*). The ALJ concluded that Plaintiff was capable of performing past relevant work as an assembler because such work did not require her to perform activities that are precluded by her RFC. (Tr. 21).

In the alternative, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 21-22). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find work at the light exertion level as a ticket taker, office clerk or mail clerk (collectively 4,100 jobs in Kentucky/382,000 jobs nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she was not under a "disability," as defined by the Social Security Act. (*Id.*).

**C.  Analysis**

Plaintiff essentially advances four arguments on appeal. (Doc. # 15-2). First,

4

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of her treating and examining physicians. Second, Plaintiff asserts that the ALJ did not fairly evaluate the severity of Plaintiff's symptoms  Third, Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility. Fourth, Plaintiff argues that the ALJ relied on the VE's response to an improper hypothetical. Each of these arguments will be addressed in turn.

### 1. The ALJ did not commit reversible error by failing to give proper weight to the opinions of treating and examining physicians.

Courts generally frown upon "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). In such situations, the issue is deemed waived because "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *Id.* This same reasoning has been applied to disability determination appeals. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006). When Plaintiff "has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record," the Court need not formulate arguments on his behalf or undertake open-ended review of the record. *Id.*

In her Motion for Summary Judgment, Plaintiff baldly asserts that "the overwhelming weight of the treating and examining physician opinions prove that Junell Nicole McQueen is totally disabled." (Doc. # 15-2 at 27). Plaintiff summarizes several opinions from treating or examining sources and cites relevant legal authority, but fails to apply the law to the facts of her case. For example, Plaintiff does not explain *how* the ALJ erred in his analysis. In fact, it is not even clear which medical opinions are allegedly entitled to more weight or why

5

Plaintiff believes they should have been weighed differently. Plaintiff has laid the foundation for her argument, but did not complete her analysis. Because this Court is not tasked with filling in Plaintiff's argument for her, this assignment of error does not merit further consideration.

2. **The ALJ did not err in evaluating the severity of Plaintiff's symptoms.**

The Sixth Circuit has recognized that the cause of a disability may not be the underlying condition itself, "but rather the symptoms associated with the condition." *Id.* at 247. In such situations, the ALJ must perform a two-step analysis to evaluate complaints of disabling pain. *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011) (citing 20 C.F.R. § 416.929(a); *Rogers*, 486 F.3d at 247). First, the ALJ must determine "whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the alleged symptoms." *Id.* at 862-63. If the ALJ finds that such impairment exists, the ALJ must then consider the intensity, persistence and limiting effects of the symptoms on the claimant's ability to perform basic work activities. *Id.* at 863. When evaluating the claimant's symptoms, the ALJ should consider the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relive symptoms; other measures taken to relieve symptoms; and any other factors bearing on the limitations of the claimant to perform basic functions. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *2-3 (July 2, 1996).

The ALJ noted that Plaintiff's physicians treated both her mental and physical conditions conservatively. For example, Plaintiff reported that her anxiety was effectively

6

managed with commonly prescribed psychotropic drugs. (Tr. 19). Treatment records indicated that Plaintiff manifested no outward signs of emotional disturbance, as she often appeared pleasant, cooperative, attentive and well-groomed. (*Id.*). Doctors also treated Plaintiff's back, knee and thumb pain with a conservative combination of physical therapy, electrical stimulation and muscle relaxers. (Tr. 18). MRIs revealed only mild disc protrusion with degenerative disc disease and physical assessments reported "macro activity inclusive of common workplace exertional and postural elements." (*Id.*).

The record reflects that Plaintiff manages a wide range of daily activities. (Tr. 17). The ALJ noted that Plaintiff took care of her personal hygiene, made and kept appointments without reminders, helped her grandmother, prepared basic meals, cared for her three dogs, shopped, paid bills, drove (or secured transportation) and performed chores (with extra breaks). (*Id.*). Although Plaintiff was reportedly unable to sit behind the wheel for long distances, one set of treatment notes indicated that Plaintiff drove to her appointment, which was a two-hour, one-way trip. (*Id.*). After a telephone interview, an agency field representative reported that Plaintiff's understanding, coherency, concentration and ability to communicate were unimpaired. (*Id.*).

Despite Plaintiff's assertion to the contrary, the ALJ utilized the proper test to evaluate Plaintiff's complaints of pain. First, the ALJ found that Plaintiff's "medically determinable impairments could reasonably cause the symptoms alleged." (Tr. 17). The ALJ then proceeded to consider Plaintiff's statements regarding their intensity, frequency and limiting effects, ultimately concluding that her statements were "not credible to the extent they are inconsistent with the RFC." (*Id.*). In reaching this conclusion, the ALJ reviewed Plaintiff's daily activities, frequency of symptoms and effectiveness of medication,

as directed in Social Security Ruling 96-7p.  The ALJ also took care to explain his reasoning, rather than relying on conclusory credibility assessments.  Therefore, the Court finds no error in the ALJ's evaluation of Plaintiff's subjective symptoms.

### 3. The ALJ did not err in assessing Plaintiff's credibility.

When the claimant's complaints regarding the intensity and persistence of his or her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record," including lab findings, information from treating physicians, Plaintiff's complaints of symptoms and other relevant evidence.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007)(*quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (July 2, 1996)).  Sixth Circuit case law suggests that a claimant's work history may constitute other relevant evidence.  *See Fossitt v. Comm'r of Soc. Sec.*, No. 1:12-cv-276, 2013 WL 3566524 at * 5-6 (S.D. Ohio July 11, 2013)(finding that the ALJ's comment on Plaintiff's work history was "merely an appropriate finding that Plaintiff made no serious attempts to look for other work he could perform, after he became unable to continue as an electrician").  While consistency between the claimant's complaints and the case record supports claimant's credibility, "inconsistency, although not necessarily defeating, should have the opposite effect."  *Id.* at 247-48.  Credibility determinations based solely on intangible or intuitive notions are impermissible.  *Id.* at 247.

After making a credibility determination, the ALJ must explain that decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight."  20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (Dec. 2, 1996).

8

"Blanket assertions that the claimant is not believable will not pass muster, nor will explanation as to the credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Once the ALJ has made the credibility determination, the reviewing court must give great weight and deference to that conclusion. *Id.*

As noted in the prior section of the Court's analysis, the ALJ found that Plaintiff manages many activities associated with daily living, such as personal grooming, helping her grandmother, preparing meals and caring for her three dogs. (Tr. 17). The ALJ determined that this "independent lifestyle undermine[s] her alleged incapacitation." (*Id.*). Therefore, the ALJ concluded that Plaintiff's statements regarding the intensity, frequency and limiting effects of her symptoms are "not credible to the extent that they are inconsistent with the RFC." (*Id.*).

To the extent that Plaintiff complains of the ALJ's alleged failure to consider her work history, the Court would note that past employment is but one example of "other relevant evidence" that the ALJ may consider. Plaintiff overlooks the fact that the ALJ *may* consider past employment, among a host of other factors, but is not required to do so. Even the most robust employment record does not, by itself, require a positive credibility finding. Having reviewed the ALJ's credibility assessment, which carefully detailed the inconsistencies between Plaintiff's daily activities and subjective complaints of pain, the Court finds no error.

**4.     The ALJ did not err in relying on the VE's response to an appropriate hypothetical question.**

In posing a hypothetical question to a vocational expert, an ALJ must accurately

describe Plaintiff's functional limitations. *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). However, the ALJ need only incorporate those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In this case, the ALJ asked the VE to suppose someone with Plaintiff's age, education, work experience and residual functional capacity, and asked whether jobs exist in the national economy for such an individual. (Tr. 21-22). The VE replied that there were, giving representative occupations. (*Id.*). Put another way, the ALJ incorporated the limitations that he found to be credible. Because the ALJ's determinations as to Plaintiff's functional limitations were reviewed above and found to be sound, the Court finds no error in the hypothetical posed to the VE.

### III. CONCLUSION

Accordingly, for the reasons stated, **IT IS ORDERED** as follows:

1. The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 15-2) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 16) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 17th day of April, 2014.



Signed By:
*David L. Bunning*
United States District Judge